# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

RICARDO D. JENKINS,

        Plaintiff,

v.                                                                 Case No. 09-CV-713
                                                                                    (07-CR-72)

UNITED STATES OF AMERICA,

        Respondent.

_____

## ORDER

On July 20, 2009, petitioner Ricardo Jenkins ("Jenkins") filed a motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255. Jenkins challenges his convictions of possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 851, and of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). His challenge is based on allegations of ineffective assistance of counsel. For the reasons stated below, the court is obliged to deny Jenkins's petition.

## ANALYSIS

Relief under § 2255 is appropriate if a petitioner can show that there are errors in his conviction or sentence that are "jurisdictional, constitutional, or constitute[] a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Borre v. United States*, 940 F.2d 215, 217 (7th Cir. 1991) (internal citations omitted). However, ineffective assistance of counsel claims may be brought in a § 2255

petition, regardless of whether the claim was raised on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Jenkins raises eleven grounds for relief, each alleging that his counsel was ineffective. Jenkins alleges his counsel was ineffective for: 1) failing to determine whether Jenkins was eligible for a four-level enhancement under 2K2.1(b)(6) of the sentencing guidelines; 2) failing to file any pretrial motions; 3) failing to seek pretrial discovery; 4) failing to obtain transcripts of grand jury testimony; 5) failing to determine the identity of the confidential informant; 6) failing to properly challenge admissibility, under the present-sense-impression hearsay exception, of the confidential witness's testimony; 7) failing to permit Jenkins to speak on his own behalf at sentencing; 8) failing to call any of the witnesses Jenkins instructed counsel to call; 9) failing to review police reports; 10) failing to interview Jenkins's girlfriend's brothers, who were at the residence at the time the search warrant was executed; and 11) failing to object to the government's proffer of evidence regarding whether Jenkins "possessed" a firearm. Jenkins argues that for each of these reasons he was denied the effective assistance of counsel, in violation of his Sixth Amendment rights.

Because ineffective assistance of counsel ("IAC") claims are cognizable § 2255 claims, regardless of whether such claims were asserted on appeal, the court ordered Jenkins's trial counsel (Attorneys Thomas Phillip and Krista Halla-Valdes) to file affidavits with the court responding to Jenkins's assertions, and the court

directed the government to file a response to Jenkins's motion. The government filed its response on November 27, 2009. Jenkins did not file a reply.

In response to the court's order, Attorney Phillip filed an affidavit with the court on November 27, 2009. In his affidavit, he stated that he and Attorney Halla-Valdes are under the direct supervisory authority of Federal Defender Daniel Stiller, and that Stiller had directed them not to comply with the court's order because Stiller was concerned that doing so may violate Wisconsin's Rules of Professional Conduct for Attorneys. (Aff. Phillip ¶¶ 2, 10). Specifically, Stiller felt that the duty of confidentiality owed by Attorneys Phillip and Halla-Valdes to Jenkins, prevented the attorneys from complying with the court's order, absent an indication that Jenkins had provided informed consent waiving the privilege. Phillip's affidavit cites the Wisconsin Rules of Professional Conduct for Attorneys, as well as the ABA Commentary thereto, in support of Stiller's position; however, conspicuous by its absence is the fact that no case law is cited in support of this position. The court, therefore, undertook its own research in order to determine the implications of Jenkins's IAC allegations against the backdrop of the attorney-client privilege.

The generally accepted rule is that a litigant that challenges the sufficiency of his attorney's services impliedly waives the attorney-client privilege as to matters relating to those issues. *Garcia v. Zenith Electronics Corp.*, 58 F.3d 1171, 1175 n. 1 (7th Cir. 1995) ("We note that the attorney-client privilege is generally waived when the client asserts claims or defenses that put his attorney's advice at issue in the litigation."). This rule unquestionably attends in habeas cases as well, and – given

the fact that the issue has been addressed several times at the appellate level – there does not seem to be any requirement that the district court obtain an express waiver.[1] *U.S. v. Pinson*, 584 F.3d 972, 977-78 (10th Cir. 2009) ("When a habeas petitioner claims that he received ineffective assistance of counsel, he puts communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."); *see also Johnson v. Alabama*, 256 F. 3d 1156 (11th Cir. 2001) (same result); *Tasby v. United States,* 504 F.2d 332, 336 (8th Cir.1974) (same result). The fact that the petitioner is pro se does not appear to be relevant. *Pinson*, 584 F.3d 972 (finding implied waiver of attorney-client privilege even though 2255 petitioner was proceeding pro se); *see also Garcia v. Hartley*, 2009 WL 1392082 (D. Colo. 2009) (same).

In certain jurisdictions, the government will move the court for an order expressly stating that the attorney-client privilege has been waived. *Mower v. United States*, 2008 WL 2223200, (D.Utah May 27, 2008); *U.S. v. Herrera-Martinez*, 484 F. Supp. 2d 872, 874 (N.D. Ind. 2007). There is no authority saying this is necessary though. Perhaps the area requiring the most caution is the breadth of the response the court orders the attorney to provide. "[T]he court must impose a waiver no broader than needed to ensure fairness of the proceedings before it." *Bittaker v.*

---

[1] Furthermore, the court finds that the fact that waiver of attorney-client privilege is not addressed in the standard form appended to the Rules Governing Section 2255 Proceedings for the United States District Courts to be suggestive that express waiver is not required. Given the frequency with which IAC claims are raised in 2255 motions, if express waiver were required for attorneys to be able to respond to such claims, it would be nonsensical for the issue of waiver to not be addressed in the standard form or its instructions.

-4-

*Woodford*, 331 F.3d 715, 720 (9th. Cir. 2003). In *Pinson*, the Tenth Circuit stated – in regards to the district court's order to the attorney "to provide an affidavit addressing the issues raised in [petitioner's] § 2255 Motion" – that it found "the potential scope and lack of specificity in the district court's order a bit troubling." 584 F.3d at 979. Ultimately though, the court in *Pinson* found that the court had not abused its discretion.

At the end of the day, the court recognizes that Stiller's position was taken in good faith accompanied by a sincere effort to abide by the applicable rules of conduct. That said, however, the court finds no basis for Stiller's position in any of the relevant case law authorities. Neither, though, did the court find any Seventh Circuit case law stating that informed waiver is not required from a pro se § 2255 litigant asserting IAC claims. Thus, despite the ample case law from other circuits to the contrary, it is possible, though unlikely, that the Seventh Circuit would agree with Stiller on this issue.

Fortunately though, this case can be resolved without resolving the nettlesome issue of attorney-client privilege. The court sought information from Attorneys Phillip and Halla-Valdes in order to determine the truth of Jenkins's allegations, as well as the reasonableness of the attorneys' actions. However, the government has successfully demonstrated in its submission that, even if Jenkins's allegations are true, and even if the attorneys' actions were constitutionally deficient, Jenkins would nonetheless not be entitled to relief because he would not have been prejudiced by

such deficiency.[2] To prevail on an IAC claim, a petitioner must show that counsel's performance was constitutionally deficient, and that the deficient performance prejudiced the defense such that petitioner did not receive a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because Jenkins cannot show that his attorneys' alleged deficient performance prejudiced his defense, he cannot prevail on his claims.

To satisfy the prejudice prong, Jenkins must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would be different." *United States v. Starnes*, 14 F.3d 1207, 1209-10 (7th Cir. 1994). None of the deficiencies alleged by Jenkins would – had they not occurred – probably have resulted in a different outcome. This is clearly demonstrated by the weight of the uncontroverted evidence presented at trial:

> The jury heard that law enforcement sought and obtained a search warrant for Jenkins' home on February 7, 2007. Trial Tr. 86. The warrant authorized the officers to search for a number of items, including: cocaine, scales, weapons, money, and items of personal identification. Id. The officers executed the search warrant and found exactly those items.
>
> Contrary to Jenkins' assertions, Jenkins was the sole adult occupant of the house at time the search warrant was executed and the only other adult who lived in the house was his fiancé, Shemicka Free. Trial Tr. 88, 91, 236. Officers recovered an eight-ball sized quantity of crack cocaine and a 9mm magazine in the room where Jenkins was found. Trial Tr. 90,177. Jenkins made Mirandized, incriminating statements demonstrating his knowledge and possession of that crack

---

[2] The court further notes that the government's response brief (to which Jenkins did not file a reply) also adequately establishes that the performance of Jenkins's attorneys was not constitutionally deficient. The court merely focuses on the prejudice prong in its analysis so as to avoid the unnecessary expenditure of limited resources that would result from a detailed explication of the myriad reasons why Jenkins's baseless motion must fail.

-6-

cocaine and a firearm. Trial Tr. 90-91. When asked if there was any other cocaine in the residence, Jenkins said, "no, the dope that you'll already found is all I had in my house." Trial Tr. 91. That turned out to be a lie - but it also constituted an admission that Jenkins knowingly possessed the eight-ball. When asked if there were any firearms in the residence, Jenkins, a convicted felon, stated, "I got a Glock upstairs on top of my TV in my bedroom." Trial Tr. 92-93. Officers found a loaded Berretta .40 caliber pistol in precisely that location, as well as a box of .25 caliber Remington ammunition, and a small quantity of marijuana. Trial Tr. 121, 123. In the kitchen, officers recovered two digital scales with significant wear, two larger quantities of crack cocaine packaged separately, and a box of .45 caliber ammunition. Trial Tr. 139-146. Jenkins repeatedly admitted that he lived in the home and other documents and items recovered by officers - including a utility bill in his name - demonstrated his ties to the residence. Trial Tr. 91, 146. Jenkins, who claimed to be a self-employed barber that cut hair out of his home, also had $1364 cash on his person at the time officers entered the home. Trial Tr. 93, 192. Detective Keith Dodd, who had worked for the Milwaukee Police Department for 14 years and participated in hundreds of narcotics investigations, testified that several factors including the quantity of crack cocaine, its packaging, the presence of two digital scales, ammunition, a firearm and the denominations of the money found on Jenkins' person, suggested that the crack cocaine was possessed for distribution - not personal use. Trial Tr. 182-188.

(Respd't. Br. Resp. 2255 Mot. at 3-4). Jenkins has not alleged or argued that his attorneys' deficient performance resulted in any of the above detailed evidence being admitted when it should not have been, or that such performance resulted in exculpatory evidence not being admitted that should have been admitted.

As for the allegation that Jenkins's attorneys failed to permit him to speak on his own behalf at sentencing and that his attorneys failed to determine whether Jenkins was eligible for a four-level enhancement under 2K2.1(b)(6) of the sentencing guidelines, these issues are readily dispatched. The court asks every defendant before it for sentencing whether they would like to say anything on their

-7-

Case 2:09-cv-00713-JPS    Filed 01/08/10    Page 7 of 9    Document 7

own behalf before imposing sentence. Mr. Jenkins was no exception. If he chose not to address the court, regardless of whether such choice was influenced by counsel, that was his decision. Further, no prejudice resulted to Jenkins as a result of his silence at sentencing.

Similarly, there was no issue with the guidelines adopted by the court at sentencing. Jenkins was convicted of, and sentenced on, two separate counts: 1) possession with intent to distribute five grams or more of cocaine base; and 2) being a felon in possession of a firearm. Jenkins's base offense level for count one was increased by two (from twenty-eight to thirty) pursuant to U.S.S.G. § 2D1.1(b)(1) because he possessed a firearm. His base offense level for count two was increased by four (from fourteen to eighteen) pursuant to U.S.S.G. § 2K2.1(b)(6) because he possessed the firearm in connection with a felony (namely the felony for which he was convicted on count one). Jenkins asserts that this four level enhancement constituted a double counting for the firearm, since he already received a two point enhancement for it under count one. This argument is meritless. Jenkins's adjusted offense level for count one was thirty; his adjusted offense level for count two was eighteen. For sentencing, the two counts were grouped together pursuant to U.S.S.G. §3D1.2(c), giving Jenkins a total offense level of thirty. "When courts group several counts to which different guidelines apply, they calculate the base offense level using the count that would produce the highest offense level. The other counts essentially fall away for sentencing purposes." *United States v. Mahalick*, 498 F.3d 475, 481 (7th Cir. 2007) (citing U.S.S.G.

-8-

Case 2:09-cv-00713-JPS   Filed 01/08/10   Page 8 of 9   Document 7

§ 3D.3(b)). "This prevents any double counting between one of several substantive offenses and an enhancement that punishes similar conduct." *Mahalick*, 498 F.3d at 481. Thus, Jenkins suffered no harm as a result of his attorneys not challenging the sentencing guidelines, as there was no error in the computation of the guidelines.

In the end, Jenkins received effective assistance of counsel. His attorneys' performance was not deficient. Even if one were to assume that it was deficient, Jenkins could still not prevail on his claims because he has not demonstrated the requisite prejudice from such alleged deficient performance. Jenkins's motion is without merit and must be denied.

Accordingly,

**IT IS ORDERED** that petitioner's Motion to Vacate, Set Aside, or Correct Sentence (2255) (Docket #1) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of January, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge